Florence GILLMOR, Plaintiff and Respondent,

v.

Edward Leslie GILLMOR, and C. Frank Gillmor, Defendants and Appellants.

No. 18416.

Supreme Court of Utah.

Dec. 19, 1984.

E.J. Skeen, Clifford L. Ashton, Salt Lake City, for defendants and appellants.

James B. Lee, James M. Elegante, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

The defendant Edward Leslie Gillmor appeals from a $29,760 judgment awarded to Florence Gillmor, a cotenant, because defendant obstructed her from exercising her right to occupy land in which she owned an undivided interest with the defendant and C. Frank Gillmor. The property is made up of several large parcels amounting to some 33,000 acres located in Summit, Tooele, and Salt Lake counties.

Two brothers, the parties' fathers, Frank and Edward Lincoln Gillmor, had owned the land and used it for their ranching business. Upon the death of Frank Gillmor, his one-half interest in the property passed in equal shares to his sons, the defendant and C. Frank Gillmor. Edward Lincoln Gillmor continued the ranching business, and for several years grazed cattle and sheep on portions of the common properties. Upon the death of Edward Lincoln Gillmor, his one-half interest passed to his daughter, the plaintiff Florence Gillmor, and she, C. Frank, and the defendant became tenants in common.

In May 1979, the plaintiff filed the instant suit for an accounting and damages for the defendant's exclusive use of the property since January 1, 1979. She also filed a separate suit for partition of the common properties.[1]

The trial was divided into two phases to determine first the damages from January 1, 1979, to May 31, 1980, and second the damages from June 1, 1980, to December 31, 1980. The trial court held that from January 1, 1979, to May 31, 1980, the defendant had grazed livestock on the common properties in such a manner as to constitute exclusive use of the properties and thereby exclude the plaintiff from grazing her livestock on those properties. The trial court awarded a $21,544.91 judgment for one-half the rental value of the properties in favor of Florence Gillmor and against defendant. Defendant did not appeal that decision.

In the second phase of the trial, the trial court found that "[b]etween June 1, 1980 and December 31, 1980, defendant Edward Gillmor continued to graze his sheep and cattle on the common properties in Salt Lake and Summit counties or to use said lands to produce feed for his cattle and sheep, and such use ... was to the exclusion of the plaintiff."

On appeal, the defendant argues with respect to the second judgment (1) that "there is no evidence or finding on the issue of ouster," and (2) that even if there were an ouster, the damages are excessive.

I.

The law is that a cotenant may sue for his share of rents and profits from common property if he has been ousted from possession of the common property. *Roberts v. Roberts*, Utah, 584 P.2d 378, 380 (1978). The defendant argues that the trial court did not find that the defendant ousted the plaintiff. The trial court did not specifically use that term in its findings of fact and conclusions of law, but it did find that the defendant had both exercised exclusive use and possession and had also

1. That suit was concluded by our affirmance of the trial court's decree of partition in *Gillmor v.* *Gillmor*, Utah, 657 P.2d 736 (1982).

excluded the plaintiff from use of the common properties.[2]

Mere exclusive use of commonly held properties by one cotenant is not sufficient to establish an ouster. A tenant in common has the right to use and occupy the entire property held in cotenancy without liability to other cotenants. Each cotenant has the right to "free and unobstructed possession . . . without liability for rents for the use and occupation thereof." *Utah Oil Refining Co. v. Leigh,* 98 Utah 149, 155, 96 P.2d 1100, 1102 (1939).

> That one cotenant is not liable to his cotenant for rents for the occupancy of the common property is elemental. And this is true even though [the cotenant] uses it and derives income therefrom, as where he occupies . . . or farms a piece and takes the crops; or uses it for storage purposes; as long as he does not interfere with the cotenant's right to likewise occupy, use and enjoy.

98 Utah at 155, 96 P.2d at 1103 (citations omitted). *Accord Roberts v. Roberts,* Utah, 584 P.2d 378 (1978); 4 *Thompson on Real Property* § 1805 (2d ed.1979). *Cf. Heiselt v. Heiselt,* 10 Utah 2d 126, 349 P.2d 175 (1960).

However, a cotenant who ousts another cotenant or acts in such a fashion as to necessarily exclude a fellow cotenant, violates the rights of that cotenant. *Roberts v. Roberts,* 584 P.2d at 380; *Utah Oil Refining v. Leigh,* 98 Utah at 155, 96 P.2d at 1103; 4 *Thompson on Real Property, supra,* § 1805 at 189. To establish a right to share in the rents and profits from the common property, it must be established that a cotenant has used the property so as to "necessarily exclude his cotenant." *Utah Oil Refining Co.,* 98 Utah at 155, 96 P.2d at 1103.

Exclusive use means more than one cotenant using the entire property; it requires either an act of exclusion or use of such a nature that it necessarily prevents another cotenant from exercising his rights in the property. *Roberts v. Roberts,* 584 P.2d at 380–81; *Utah Oil Refinery Co. v. Leigh,* 98 Utah at 155, 96 P.2d at 1103. *Accord Tolen v. Tolen,* 96 N.J.Eq. 496, 126 A. 211 (1924); *Thompson v. Jones,* 77 Tex. 626, 14 S.W. 222 (1890); 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 43 (1965). *See also* cases cited in Annot., *Accountability of cotenants for rents and profits or use and occupation,* 51 A.L.R.2d 388 § 13 (1957). *Cf. Heiselt v. Heiselt,* 10 Utah 2d 126, 349 P.2d 175 (1960).

The defendant contends that the trial court erred in finding that the defendant had exercised exclusive possession and use of the common properties in such a manner as to exclude the plaintiff from using the land. We disagree. The plaintiff sought to graze livestock on the land to the extent of her interest, but was effectively prevented from doing so. She sent defendant a letter expressing her intent to graze her livestock on the properties in proportion to her ownership and requested that the defendant accommodate her plans by altering his operations accordingly. The defendant refused to respond and continued to graze the lands to their maximum capacity. He even acknowledged that additional grazing would have damaged the range land. The defendant asserts that at various times he or his attorney invited the plaintiff onto the lands, but he never indicated any intention to alter his operations so as to accommodate the plaintiff's use of the land. Had the plaintiff grazed her livestock on the common properties while defendant's livestock was also there, the land would have been overgrazed. Indeed, the defendant admitted that if the plaintiff had attempted to put additional sheep on the land, he would have sought an injunction to prevent damage to the land.

We hold that when a cotenant out of possession makes a clear, unequivocal de-

---

**2.** It follows that the burden to establish ouster in a suit to recover rents and profits is less stringent than the burden to establish ouster in an adverse possession action. *Massey v. Prothe-* *ro,* Utah, 664 P.2d 1176 (1983); *Olwell v. Clark,* Utah, 658 P.2d 585 (1982); *Memmott v. Bosh,* Utah, 520 P.2d 1342 (1974); *Holbrook v. Carter,* 19 Utah 2d 288, 431 P.2d 123 (1967).

mand to use land that is in the exclusive possession of another cotenant, and that cotenant refuses to accommodate the other tenant's right to use the land, the tenant out of possession has established a claim for relief. It is not necessary that the out-of-possession cotenant resort to force or to means that would damage the common property to establish a right to legal redress.

## II.

The defendant argues that the damage award of $29,760 for seven months of grazing is excessive when contrasted with the award of $21,544.91 in the first phase of trial for seventeen months of grazing.

At the first phase of trial for damages, the plaintiff proposed that defendant's use of the common properties be valued by a method based on "Animal Unit Months" (AUMs). An AUM is the value of the feed which one cow or five sheep eat during one month. Computed by this method, plaintiff's damages were $31,164.37. Defendant asserted that his use of the property should be valued on a per acre rental basis at a rate comparable to rental rates of similar properties. Damages according to defendant's method amount to $9,601.02.

The trial court awarded $21,544.91, substantially less than the plaintiff requested. The trial court stated that it

> was not unmindful of the testimony of the defendant Gillmor as to the costs involved in the operation as well as the net profit for the years of 1979 and so far during 1980 and also the argument that defendant Edward Leslie Gillmor had held the Gillmor properties together, continued the sheep operation after the properties had been passed on and maintained its value as an ongoing operation.

For those contributions to maintaining the common properties, the trial court apparently gave some recognition in the award of damages in the first phase. As stated previously, the defendant did not appeal that judgment.

■ At the second damage phase of the trial, the trial court awarded $29,760, exactly the amount requested by the plaintiff, calculated at $6.84 per AUM used plus the cost of the hay that the defendant used. The standard measure of damages in cases between cotenants is the rents or profits received by the tenant in possession. Whether a formula based on AUMs comports with that measure of damages, was not addressed by the parties in the first phase. The defendant does not, however, challenge the use of the AUM method of valuation as such in the second trial phase. Rather, he argues that since the trial court's judgment in the first trial was 69% of the amount plaintiff sought, the trial court should have used the same method to compute damages in the second phase of the trial and should have reduced the damages to 69% of the total. As noted above, the trial court in the first phase recognized the value of the services that defendant had rendered for the benefit of the common properties. Whether the value of those services should have been recognized in the first phase is not at issue. Suffice it to say that the defendant does not contend that the value of the services should have been recognized in the second phase of the trial.

■ The defendant also argues that the damages should not have been awarded for the time when he herded his livestock from one parcel of Gillmor land to another over land owned by a third party pursuant to trail or trespass rights, which include grazing along the way. *See generally Anderson v. Osguthorpe*, 29 Utah 2d 32, 504 P.2d 1000 (1972). Since the trail rights are appurtenant to the Gillmor land, there is no sound reason for distinguishing between them and the rights to the fee land.

■ The defendant also argues that the damages are overstated because his sheep grazed on adjoining non-Gillmor land in Park City approximately 50% of the time, equalling 561.12 AUMs. At $6.84 per AUM, plaintiff's damages, according to defendant, should be reduced by $3,838.06.[3]

The defendant's AUM figures were taken from detailed field notes of the grazing operations kept by the defendant's son during the period from June 1, 1980, to December 1, 1980. There is nothing in the findings of fact indicating why this evidence was ignored. The plaintiff argues that it should have been ignored because it contradicted defendant's answers to interrogatories on the point. Since the trial judge accepted the answers to interrogatories as the more reliable evidence, and since it was his prerogative to make the determination of credibility, the ruling must be allowed to stand.

The defendant also argues that he is entitled to an offset for repairs made on the common property. Sometime after June 1, 1980, he repaired a range fence and a ditch on the common property. He asserts that the fence repairs directly benefited the plaintiff because she now owns land which borders the fence.

 Where a cotenant in sole possession makes repairs or improvements to the common property without the consent of his fellow cotenants, he generally has no right of contribution. In *Heiselt v. Heiselt,* 10 Utah 2d 126, 131–32, 349 P.2d 175, 178–79 (1960) (quoting 14 Am.Jur. *Cotenancy* § 49 at 115 (1938)), we stated:

> While contrary doctrines have been enunciated and the question is conceded to be one of great difficulty, it appears to be generally agreed that a cotenant who has made improvements upon the common property without the assent of his cotenants is not ordinarily entitled to contribution and cannot, as a matter of right, charge them with the value or costs thereof or maintain any action that would result in a personal judgment against them. * * * Compensation for improvements is allowed, however,

where the other cotenants have stood by and permitted him to proceed to his detriment.

*Accord Craver v. Craver,* 41 N.C.App. 606, 255 S.E.2d 253 (1979); *Schilbach v. Schilbach,* 171 Md. 405, 189 A. 432 (1937) (dictum); 4 *Thompson on Real Property* § 1806 (2d ed. 1979).

 A cotenant may, however, be required to contribute his pro rata share of expenses if the cotenant in possession acted in good faith, with the bona fide belief that he was the sole owner of the property, or when the repairs were essential to preserve or protect the common estate. *See Zanzonico v. Zanzonico,* 124 N.J.Eq. 477, 2 A.2d 597 (1938); 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 62 (1965). Furthermore, where, as here, a cotenant out of possession seeks an accounting or damages, the cotenant in possession, who is held liable for the value of the use, occupancy, or rents collected, is entitled to recover reasonable expenditures made by him for necessary repairs and maintenance.[4] *E.g., First National Bank v. Groussman,* 29 Colo.App. 215, 483 P.2d 398 (1971), *aff'd* 176 Colo. 566, 491 P.2d 1382 (1971); *Gilmore v. Gilmore,* 28 Ill.App.3d 36, 328 N.E.2d 562 (1975); *Lach v. Weber,* 123 N.J.Eq. 303, 197 A. 417 (1938). *See also* Annot., 51 A.L.R.2d § 27 (1957); 20 Am. Jur.2d *Cotenancy and Joint Ownership* § 52 (1965).

 In the instant case, the evidence indicates that the repairs were a necessary cost of grazing the livestock and should have been deducted from the damages awarded. The case must therefore be remanded for a modification of the judgment.

Affirmed in part, reversed in part, and remanded for modification of the judgment. No costs.

---

**4.** For example, cotenants have recovered their cost of painting buildings to make them suitable for sale or renting, *Scott v. Staggs,* 129 Cal. App.2d 54, 276 P.2d 605 (1954); completing a partially finished house, *Todd v. Stewart,* 199 Iowa 821, 202 N.W. 844 (1925); and making miscellaneous house repairs, *Fassitt v. Seip,* 249 Pa. 576, 95 A. 273 (1915).

HALL, C.J., HOWE and DURHAM, JJ., and DEAN E. CONDER, District Judge, concur.

ZIMMERMAN, J., does not participate herein.