## Dech's Appeal.

57  467
a197  300

1. A covenant " well and sufficiently to grant, assure and convey," imports a right in the vendee to have possession at the time of the delivery of the conveyance.

2. In equity on a question of specific performance of a contract for the sale of an undivided interest in land, difficulties arising from the conduct of the vendor with his co-tenant, which prevent the vendee from obtaining possession without resorting to force or litigation, are reasons to influence the mind of the chancellor.

[Dech's Appeal.]

3. A tenant cannot claim for repairs made without the consent of his co-tenant. But repairs that are absolutely necessary for the enjoyment of the property stand on a different footing.

4. The co-tenant may defalk the cost of proper repairs in an action or bill for account. The right to such defalcation extends to a mortgagee in possession.

5. Where a bill for specific performance by a vendor is simply to obtain payment of the purchase-money, it will not be entertained.

March 20th 1868.    Before STRONG, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius. READ, J., absent.

Appeal from the Court of Common Pleas of *Northampton county*: In Equity: No. 363, to January Term 1868.

This proceeding was commenced by bill filed May 18th 1867, by Solomon Dech against John Seem, for the specific performance of a contract made November 20th 1866, by which it was agreed that—

"The said Solomon Dech, for the consideration hereinafter mentioned, doth covenant and agree with the said John Seem, his heirs and assigns, by these presents, that he the said Solomon Dech shall and will on or before the 1st day of April 1867, at the proper cost and charge of both parties, by such deed of conveyance as he or they or his or their counsel learned in the law shall advise, well and sufficiently grant, convey and assure unto the said John Seem, his heirs and assigns, in fee simple, clear of all encumbrance, all the undivided one-half of all that three-story mill, &c., * * together with all the personal property belonging to the said Dech, or his share thereof now on the premises;" Seem to pay to "Dech $5600, $2000 on the 1st day of April 1867, and for the balance give bond secured by mortgage on the premises payable with interest one year after date."

The plaintiff averred the tender of a proper deed, and that Seem refused to receive it and comply with his contract. He prayed that Seem might be compelled to comply specifically with his contract; and for general relief.

The defendant answered, averring that the plaintiff had been engaged in business at the mill with B. G. Unangst, in manufacturing and selling flour, &c., as a partner, under the firm of Unangst & Dech; that the parties, on the 26th of March 1867, went together to the office of Mr. Fox, the plaintiff's solicitor, and were advised by him that the plaintiff could not give the defendant a perfect title, because the premises were in the exclusive possession of Simon Frederick, who claimed to hold them to the exclusion of the plaintiff and refused to admit either plaintiff or defendant into possession; that Mr. Fox also advised that litigation would be necessary to obtain possession, &c., and told the defendant that there was no use of buying a lawsuit; that at the date of the agreement it was expressly understood that the defendant was to have undisturbed possession on the 1st of April 1867, which stipulation was omitted

by the mistake of the scrivener; that the defendant, upon being informed at the office of Mr. Fox that he could not obtain possession, declined to take the property unless he could obtain possession as agreed on, and it was then agreed that the contract should be rescinded; that Frederick was in possession of both real and personal estate, and positively refused to deliver them either to plaintiff or defendant, and the plaintiff was therefore unable and did not deliver them to the defendant at any time; that a bill in equity is pending between the plaintiff and Unangst to settle their partnership accounts, &c., in which the rights as to the personal "and possibly" the real estate will be determined; that on the 1st of April 1867 the plaintiff tendered a deed, from which the articles of personal property were omitted, nor did the deed convey the property clear of encumbrances, inasmuch as it was encumbered by Frederick's possession and claim; that the plaintiff refused to allow the solicitor of the defendant to examine the deed; that the plaintiff was never ready nor able to perform his part of the contract.

Testimony was taken by an examiner, but no master was appointed.

A. Getz, a witness for plaintiff, testified that the plaintiff tendered a deed to the defendant, who said he had the money ready for him, and asked plaintiff for possession; plaintiff said, "I have tendered you what I promised." On cross-examination, the witness said that the defendant wished to have the deed to exhibit it to his counsel; that the plaintiff did not give him the deed.

For the defendant:—

Joseph Dech testified that by plaintiff's direction he went to the mill to see Frederick, who said neither the plaintiff nor Unangst could give a good title; Frederick denounced defendant as dishonest; said he could not sit there or "keep a man there to watch him to see if he stole all or half;" said he would have nothing to do with defendant.

G. Ziegenfuss testified: "Seem and Dech were at my office April 1st 1867. Mr. Dech tendered a deed to Mr. Seem. Mr. Seem had a mortgage drawn, and had $2000 in checks and greenbacks. Mr. Seem told Dech that if he would go with him to his, Seem's, counsel, and the deed was such as he would approve of, he would pay him; Seem asked Dech if he could or would give him possession. Dech said he did not promise to give him possession; that he sold him the property as it was. Seem said, that if he would give him such a deed and possession of the property, Dech should name any hour and place that day, and he would meet him, and get the checks turned into money in an hour's time, if he would say so; Dech did not object to the checks, but said he had offered all he intended or promised; Dech said he had nothing

to do with Seem's counsel. He did not agree to have the deed exhibited to counsel."

S. Seem was present on the occasion spoken of by Ziegenfuss, and his testimony was about the same.

J. R. Biery testified that the defendant came to the mill three times; Frederick said the plaintiff had no right to sell so long as he and Unangst were at law; that he could not give a good deed nor give possession as long as he, Frederick, was there; and that he would not give possession to anybody.

Frederick testified that he had bought half of the mill from Unangst in May 1866; that the mill was in bad repair; that he called plaintiff to help make repairs; he refused to make any, or pay any of the expense—" the mill might rot down for him;" the witness testified that he had made a large amount of repairs, and specified them; plaintiff never paid for any part of the repairs; witness told defendant he did not want to take any partner, and would rather take the plaintiff than him; witness said that the personal property had been sold to him by Unangst.

There was evidence also that Seem, who was a miller, wished possession, to get back to his old business.

The defendant gave in evidence this letter :—

" Catasauqua, March 18th 1867.
" Mr. John Seem :
" Brother, Joseph Dech will talk to Simon Frederick in the forenoon, and in the afternoon will be the time for you to talk to him, I think it will be best for you to go alone, if I will go with you I am afraid we can do nothing, the renting is of your own business, so I think you will succeed, if not let me know then we will go together, or I will go alone just as you think, write immediately.
                              " Yours, &c.,
                                   " Solomon Dech."

·In the plaintiff's bill in his suit against Unangst, he charged that Unangst had sold the partnership property, or the greater part of it, and applied the proceeds to his own use.

The Court of Common Pleas dismissed the bill at the plaintiff's cost. He appealed, and assigned this decree for error.

*E. J. Fox,* for appellant.—The plaintiff's share in the mill was not subject to a lien for repairs by Frederick : Kauffelt *v.* Bower, 7 S. & R. 73; Hepburn *v.* Snyder, 3 Barr 78; Hackadorn's Appeal, 1 Jones 89; In re Wilson, 4 Barr 165; Hendrickson's Appeal, 12 Harris 363; Hildebrand's Appeal, 3 Wright 133.

Where matters in the answer are not responsive to the bill they require proof: Eberly *v.* Groff, 9 Harris 251; Pusey *v.* Wright,

[Dech's Appeal.]

7 Casey 395; 2 Danl. Ch. Pr. 840, 841, and notes; Jones *v.* Beck, 2 Gill. 106; Hart *v.* Ten Eyck, 2 Johns. Ch. 89.

*W. E. Doster* and *H. Green,* for appellees.—Granting a decree for specific performance is a matter of discretion: 2 Story's Eq., § 742; Pennock *v.* Freeman, 1 Watts 408; Dalzell *v.* Crawford, 1 Pars. R. 37; Freetly *v.* Barnhart, 1 P. F. Smith 281.

The Supreme Court on appeal will not inquire into the soundness of the exercise of its discretion by the lower court: Renninger *v.* Thompson, 6 S. & R. 1; Nice *v.* Bowman, 6 Watts 29; Frederick *v.* Gray, 10 S. & R. 186; McKee *v.* Sandford, 1 Casey 105; Helfenstein *v.* Leonard, 14 Wright 477. As to the grounds on which equity refuses to enforce specific performance, they referred to 2 Story's Eq., § 717, note 1, § 750; Harnett *v.* Yielding, 2 Sch. & Lefroy 553; Adams's Eq. 259; Malins *v.* Freeman, 2 Keene 25; Clowes *v.* Higginson, 1 Ves. & B. 524; Talbot *v.* Ford, 13 Sim. 173; Kimberly *v.* Jennings, 6 Id. 340; Batten on Specific Perf. (65 Law Lib.) 43, 108, 115, 132; Wood *v.* Griffith, 1 Swanst. 43; Henderson *v.* Hays, 2 Watts 148; Campbell *v.* Spencer, 2 Binn. 129; Miller *v.* Henlan, 1 P. F. Smith 265; Nicoll *v.* Carr, 11 Casey 381; Brightly's Eq., § 242; Brightly's R. 159; Colwell *v.* Hamilton, 10 Watts 416.

A tenant in common making necessary repairs has a lien for reimbursement: 2 Story's Eq., § 1234–1237; Hibbard *v.* Cooke, 1 Sim. & Stu. 552; 2 Fonbl. Eq., book 2, ch. 4, § 2, note 9; Lake *v.* Gibson, 1 Eq. Cas. Ab. 291.

The opinion of the court was delivered, March 27th 1868, by

AGNEW, J.—In view of all the circumstances of this case, it is one in which a chancellor would not decree specific performance, but would leave the plaintiff to his action at law to recover the purchase-money claimed. The covenant of Solomon Dech was well and sufficient, to grant, convey and assure the undivided half of the premises to John Seem, in fee simple, clear of all encumbrance, by such deed of conveyance to Seem as his counsel learned in the law should advise. Though there was no express covenant to deliver possession, undoubtedly the deed would import the right to have it at the time of the delivery of the conveyance. Though a formal investiture with possession might not be necessary at law, where there is no obstacle to the vendee's proceeding to take it, unquestionably in equity upon a question of specific performance, difficulties engendered by the conduct of the vendor himself, with his co-tenant, which prevents the vendee from obtaining the possession without resorting to force or litigation, are reasons to influence the mind of the chancellor. This is especially true, where they connect themselves with other circumstances, such as will be presently noticed, to render the

relation of the vendee to his proposed co-tenant one of difficulty and unpleasantness.    The evidence here very clearly shows that owing to the remissness of Solomon Dech, his co-tenant Simon Frederick was compelled to incur a large expense in putting the mill into repair before it could be used. at all.    A tenant in common cannot claim for improvements made without the consent of his co-tenant: Crest *v.* Jack, 3 Watts 238.    But repairs that are absolutely necessary to the enjoyment of the property stand on a different footing.    As between tenants in common, of a house or mill which falls into decay, and the one is willing to repair the same but the other is not, he that is willing shall have have a writ *de reparatione facienda*, and the writ saith *ad reparationem et sustentationem ejusdem domus tenetur ;* whereby it appeareth, says Sir Edward Coke, that owners are in that case bound *pro bono publico*, to maintain houses and mills which are for the habitation and use of men: Co. Litt. 200 b, 54 b.    In this state the remedy probably would be by an action for the money expended, and certainly the co-tenant could defalk in an action or bill for an account of the profits.    The right to defalk for proper repairs also extends to the case of a mortgagee in possession: Givens *v.* McCalmont, 4 Watts 460.    Taking the evidence as a whole, it leaves no doubt upon the mind that Simon Frederick claimed to hold possession of the premises until reimbursed for the absolutely necessary repairs made by him.    The testimony of Joseph Dech and Jacob Biery points directly this way, while it is corroborated by the testimony of George Ziegenfuss, Samuel Seem and Augustus Getz, as to the plaintiff's refusal to give possession.    Connecting their testimony with the plaintiff's letter of March 18th 1867, it makes it very clear that the plaintiff himself understood that Frederick was making difficulty about yielding up possession to Seem, the defendant.    In further connection is also the difficulty made by Frederick as to the personal property at the mill.    By the agreement between the parties, Solomon Dech bound himself to transfer his share of all the personal property then on the premises.    It is equally clear that Frederick claimed all this property by purchase from Unangst, the co-tenant and partner of Solomon Dech, and was unwilling to surrender it. Indeed Dech, in his bill against his copartner Unangst, claimed that the latter had among other things sold the share of Dech of the personal property at the mill and distillery.    It is not material that the personal property was omitted from the deed tendered by Dech to Seem; the want of equity in the claim of Dech arises out of the difficulty and annoyance to which his acts would subject Seem in obtaining the possession and enjoyment of this personal estate.    Its title is doubtful and its enjoyment denied, and a chancellor would pause before he would compel a purchaser to pay his money, which was a gross sum to be paid for the entire interest

of Dech in the real and personal estate, without distinction or a separate valuation of each.

Another fact in the case which is clearly proved, is the conduct of the plaintiff at the time of the tender of the deed. It is clear that Seem was both ready and willing to comply with his contract. He had his money ready for the cash payment, and a mortgage drawn up so far as it could be done without the description of the premises, and offered to perform his part if Dech would give him possession. Dech's only reply was, I have tendered you what I promised you—that is the deed. When told by Seem that if he would go with him to his counsel, and the deed was such as his counsel would approve of, he would pay him, Dech said he had nothing to do with Seem's counsel. This was unjust and a trifling with his covenant, which plainly required him to afford Seem an opportunity of ascertaining whether the deed was such as he ought to take. There is another fact which bears strongly upon the equity of the case, to disincline a chancellor to lend his aid. The evidence shows that Seem was a miller, and that one of his purposes in buying from Dech was to return to his old employment. This of course would require his personal attention to the mill in conjunction with Frederick, who would be his co-tenant. And independently of his desire to conduct the milling business, his relations to Frederick as a co-tenant would necessarily be intimate. But the evidence is very clear that Frederick did not desire any connection with Seem; said he would not have him as a partner, and denounced his honesty in the highest degree. He said he could not sit there and watch him; and could not keep a man there to watch him, to see if he stole all or half. Certainly no chancellor would feel his conscience moved to compel a purchaser to enter into such a relation as this. Its result must be discomfort, annoyance, controversies and probable litigation. That this reason of itself would be sufficient to prevent specific performance we do not say, but undoubtedly when connected with the others already stated, it would decide the case. We do not say indeed that any one of these reasons alone would stay our hand; but upon the whole case it is clearly one where a chancellor will refuse his aid and leave the party to his remedy at law. Here the plaintiff has a complete and adequate remedy upon his covenant. He only seeks to recover his money, and this he can easily do by an action, if he have fulfilled his own part of the contract. We have said in a case decided at Harrisburg last May (Kauffman's Appeal, 5 P. F. Smith 383), that where there is nothing whatever in the circumstances of the case requiring the aid of chancery to give effect to a contract, and the bill for specific performance is simply an action and nothing more to recover purchase-money; we will not entertain it. The decree

in such case being of grace merely, and the party having a full and adequate remedy at law, we will not lend the strong arm of chancery, armed with a power to arrest the body for contempt, to enforce the payment of a mere debt, from which the body is exempt under the non-imprisonment law.

Under all the circumstances of this case, we consider it not one for specific performance, and therefore affirm the decree of the court below dismissing the bill at the costs of the plaintiff, and order the plaintiff to pay the costs of this appeal.