## McLaughlin *versus* City of Corry.

1. A municipal corporation is liable for damages for injuries for neglect of its officers in not keeping its streets, roads and bridges in repair.

2. If the municipal authorities are negligent in allowing a dangerous obstruction in a public highway, which they could have removed, they are liable for damages to a person injured thereby without any fault of his own.

3. A city allowed ice and snow to accumulate in drifts and ridges on a sidewalk and remain for weeks, the plaintiff in passing lawfully on the walk slipped on it, fell and injured himself. Whether the snow and ice had so accumulated by default of the officers of the city, and whether by reason thereof the plaintiff was injured, were for the jury, and if so the city was liable to the plaintiff for damages.

4. If the obstruction was of such long duration as to be generally observable, the city was chargeable with constructive notice.

5. The measure of damages to plaintiff would be the direct expenses by reason of the injury, the inconvenience he was subjected to, pain, pecuniary loss sustained and likely to be sustained during life, and his actual permanent loss of earning power from the accident.

6. What the plaintiff might be receiving as wages would not go in mitigation of damages, but might be considered with other things as going to prove what his earning powers were.

November 12th 1874. Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Erie county:* Of October and November Term 1874, No. 224.

This was an action on the case, commenced February 7th 1872, by John McLaughlin against the City of Corry.

The declaration contained two counts :—

The first was that on the 14th of January 1871, and for weeks before, the sidewalk on the south side of Main street, in the city of Corry, near its intersection with Second avenue, in the said city, was greatly out of repair and covered in many and divers places with a large accumulation of ice, and permitted to remain in an unsafe condition : yet the said defendant, well knowing the condition aforesaid of the said sidewalk, and while the same was greatly out of repair and covered with a large accumulation of ice, wrongfully permitted it to remain out of repair, and for want of repair and by reason of the accumulation of ice and snow, the plaintiff, who was on the evening of the said 14th of January, passing along the sidewalk, unavoidably slipped and fell therefrom into a ditch, and thereby his left shoulder was dislocated and he much injured and continued so for a long time, was rendered incapable of attending to his business, and had to pay large sums of money in endeavoring to be healed, &c.

There was a second count which need not be noticed.

The case was tried April 16th 1874, before Wetmore, P. J.

The case on the first count having been taken from the jury on the ground that the evidence was insufficient, it is necessary to give the evidence somewhat at large.

77 109
154 603

77 109
212 ³153

77 109
32 SC ⁴492
33 SC ³180
33 SC ³181
33 SC ⁴196

77 109
35 SC ¹308
35 SC 308
35 SC 309
35 SC 319

77 109
222 ⁵561

[McLaughlin *v.* City of Corry.]

The plaintiff testified: "I reside in Corry, in west end of the city; I am master-mason for Oil Creek & A. R. Railroad; am mason and stone-cutter; on evening of 14th January 1871 I was coming from depot home; at corner of Main street and Second avenue there was a hard track in centre of sidewalk; the end of plank was bare; the street is six to eight inches lower than the walk, and there is a ditch towards building two feet six inches deep; it is a barn and store-house; it is two feet eight inches across; there is a bridge in front of the building over the ditch, leading into the building; the bridge starts from sidewalk; I had a foot on the ridge and a foot on end of plank that was bare; the rain had made the hard snow oval; the ice was six to eight inches high in the middle; the sidewalk is five feet three to four inches. My foot slipped and I fell forward, and my right hand struck on top of bridge, and my left hand struck against the end of the plank of the bridge; I got up and my left arm dropped, and my fingers were numb." * * *

Plaintiff then stated the character of his injuries; his inability to work as he had done, the reduction of his income from his earnings, &c.

Peter McNally testified: "The sidewalk on Main street, opposite Corry shops, was bad; boards bad; old and sometimes would float; there was a ridge of ice on sidewalks all winter; I cannot tell how it was; the snow and ice were not cleared off; the Corry shops cleared off opposite their office; the sidewalk was very bad where plaintiff fell; it was slanting and difficult to walk over; it was about as McLaughlin said; it was from one inch to what he said; some places worse than others; it was about two winters in that condition, before and after he fell; it was dangerous for foot passengers; it was in that sloping condition about two winters."

M. Curry testified: "I generally take Main street coming to town; this is the route the people generally come; there are quite a number of people west of Second avenue; about five streets west of this avenue; I saw plaintiff the day after he was hurt; where he fell there was a ridge of snow in the centre and the snow was off the sides, thawed off; this ridge of snow was five to six inches; there was a strip of six to eight inches at end of sidewalk bare; there was a space over two feet between sidewalk and barn, the ditch was two feet or over; there is a bridge leading from sidewalk into the barn; it was nearly two feet from sidewalk to ground on side towards street; there was snow on the sidewalk all winter; there was a thaw about this time and heavy rain and thawed away the snow except this ridge; * * * the corner of Second avenue and Main street, where plaintiff fell, is not far from business parts of city."

John King testified: "I live near plaintiff; I noticed the sidewalk, corner Second avenue and Main street; the centre of walk

[McLaughlin *v.* City of Corry.]

all ice and a bare place on each end; it was a dangerous ridge of ice five to six inches high; the sidewalk above the ground; there is a space between sidewalk and building, and the bridge crosses it to barn; I did not know it cleaned off except opposite Corry machine-shops. * * *

Peter Burns testified: "At the time plaintiff was hurt there was a ridge of ice in centre of sidewalk; the margin was from eight to ten inches; I noticed the sidewalk three to four days after he was hurt; it was damp weather; the sidewalk was very bad near Lemon street; the side of walk next street had given way and it was sidling and dangerous. It required attention to walk on the sidewalk with ridge of ice, and at night would be somewhat dangerous; one-sixth of population is west of Second avenue."

The defendants gave evidence as to the character of the walk. They also gave evidence that the plaintiff had been kept on the pay-rolls of the railroad company at full pay from January 1871 to December 1873.

The following were points of the plaintiff:—

2. If the ice ridge which caused the fall of the plaintiff, January 14th 1871, was in a thickly-populated or frequently-travelled portion of the city, and the defect was so notorious as to be observable by all, the corporation would be chargeable with constructive notice, and be liable for damages, the same as though actual notice were proved.

3. In the particular location in the city, as described, where plaintiff fell, January 14th 1871, five or six days' continuance of an obvious obstruction upon the sidewalk would be sufficient time to create constructive notice to the city.

6. The difference in his capacity to earn wages being one of the measures of plaintiff's damages, the fact that he may have received and may now be receiving regular pay from the A. Railroad Co., which pay is liable to cease at any time, is no defence as to the liability of the defendant to respond in damages, more especially as to future compensation.

7. In estimating damages the jury should allow not only for the direct expenses incurred by the plaintiff by reason of the injury, but also for the privation and inconveniences he is subjected to, and for the pain and suffering, bodily and mental, already experienced and likely to be yet experienced, as well as for the pecuniary loss he has sustained and is likely to sustain during the remainder of his life, from the disabled condition of his arm, and the difference it has occasioned in his ability to earn wages at his trade.

The court answered these points as follows:—

"The second point is not answered, as it is not relevant to the case.

"The third point is disposed of in the answer to the second point.

[McLaughlin *v.* City of Corry.]

" The sixth point is not relevant to the issue before the jury.

" The seventh point is not answered because it relates in part to facts not in issue before the jury."

The court further charged, " The evidence relating to the accident that occurred on the 14th day of January 1871, and the condition of the sidewalk at the place where it occurred, is not sufficient in law to render defendant liable, and there can be no recovery for the injury then sustained." ·

The verdict was for the defendant on the first count.

The plaintiff took a writ of error and assigned for error the answers to his points and the instructions to the jury.

*B. J. Reid* (with whom was *L. S. Norton*), for plaintiff in error. —The liability of the city for the defect in the sidewalk was the same whether the officials knew it or not: Erie City *v.* Schwingle, 10 Harris 384 ; Norristown *v.* Moyer, 17 P. F. Smith 356 ; Davenport *v.* Buckman, 37 N. Y. Rep. 567 ; Shearman & Redf. on Negl., §§ 147, 148, 385, 407, and notes.    Where the authorities of a town allow ice or snow to accumulate in the streets in ridges or drifts, the towns are liable for injuries resulting from these things : Shea *v.* Lowell, 8 Allen 136 ; Luther *v.* Worcester, 97 Mass. 268 ; Street *v.* Holyoke, 105 Id. 82 ; Collins *v.* Council Bluffs, 32 Iowa 324 ; Providence *v.* Clapp, 17 Howard 161. When money is raised by charitable subscription for one hurt by negligence of town authorities it is not to be taken into consideration in estimating his damages : Norristown *v.* Moyer, 17 P. F. Smith 356.    Nor the proceeds of an accident insurance policy : Harding *v.* Townshend, 43 Vermont 536 (5 American Rep. 304). As to the 7th point they cited Railroad Co. *v.* Allen, 3 P. F. Smith 277 ; Pennsylvania & Ohio Canal Co. *v.* Graham, 13 P. F. Smith 290 ; Laing *v.* Colder, 8 Barr 481.

*W. W. Brown* (with whom was *M. Crosby*), for defendant in error, cited 2 Dillon on Municipal Corp. 963 ; Stanton *v.* Springfield, 13 Allen 566 ; Hutchins *v.* Boston, 14 Id. 508 ; Billings *v.* Worcester, 102 Id. 329 ; Landolt *v.* Norwich, 11 Am. Law Reg. 383.

Mr. Justice Gordon delivered the opinion of the court, January 4th 1875. ·

That a municipal corporation, such as a city, borough, township, or county is liable for damages arising from the neglect of its officers in not keeping the streets, roads and bridges, over which it has jurisdiction, in proper repair, is established by many authorities ; among others, Dean *v.* New Milford Township, 5 W. & S. 545 ; Pittsburg *v.* Grier, 10 Harris 54 ; Allentown *v.*

Kramer, 23 P. F. Smith 406; Humphreys v. Armstrong County, 6 P. F. Smith 204.

These cases proceed upon the principle that the various municipalities have full and complete control of and power over the roads, streets and bridges within their several precincts, and that they are charged with the duty of their proper construction and repair.   In the case in hand, the plaintiff charges, that through the default of the officers of the city of Corry, the ice and snow had been permitted to accumulate, upon the sidewalk in question, in such a manner as to be dangerous to foot passengers, and that by reason thereof, he fell and received the injuries of which he complains.   Whether this were so or not, was a question for the jury, and as such the court should have submitted it.

If the city authorities were negligent in allowing a dangerous obstruction to exist in the public highway, which they could have removed, and the plaintiff was injured thereby, without any fault of his own, the city was undoubtedly liable for the damages which he suffered.

It is argued, however, that, as the obstruction complained of was the result of natural causes, over which man has no control, therefore the defendant is not liable.   This would be true if the effects produced by these causes were beyond human remedy; but ordinarily such is not the case.   Roads are constantly being worn by the never-ceasing action of the elements; but no one imagines that this is an excuse for a neglect to repair them.   A sudden flood may render a public bridge or highway impassable, but surely that is no reason for allowing it to remain so for ever.   A municipality cannot prevent the general slipperiness of its streets, caused by the snow and ice during the winter, but it can prevent such accumulations thereof, in the shape of ridges and hills, as render their passage dangerous.   It is no more difficult to remove or level such obstructions than it is those occasioned by the water and earth during the summer.   The cases of Collins v. Council Bluffs, 32 Iowa 324; City of Providence v. Clapp, 17 How. 161; Luther v. Worcester, 97 Mass. 269, all hold that municipal corporations are liable for damages occasioned by accumulations of snow and ice.   The plaintiff's second, sixth and seventh points should have been affirmed.   If the obstruction was one of such long duration as to be generally observable, the city would be charged with constructive notice thereof.   So, the true measure of damages, in addition to that indicated in the seventh point, would be the plaintiff's actual permanent loss of earning power, occasioned by the accident.   What he gets from his present employers by way of wages, cannot go in mitigation of damages, any more than would the donations of friends and neighbors; but what he earns from any source may, with other things, be considered as going to prove what his earning powers actually are.

27 P. F. Smith—8

[McLaughlin *v.* City of Corry.]

The third point embraces a question of fact for the jury, and was, therefore, properly refused.

The judgment is reversed, and a *venire facias de novo* awarded.