Sharp *v.* Keiser, Appellant.

Argued November 13, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Samuel E. Bertolet,* for appellant.—The retaining wall was an improvement not necessary to the preservation of the property: Kelsey's App., 113 Pa. 119; Gregg v. Patterson, 9 Watts & Serg. 197; Dech's Appeal, 57 Pa. 467;Beaty v. Bordwell, 91 Pa. 439.

*Chas. W. Matten,* for appellee.—The retaining wall was absolutely necessary for the preservation of the common estate, and plaintiff is entitled to his contribution from co-tenant therefor: Fassitt v. Seip, 249 Pa. 576; Devlin's Estate, 17 County Court Reports 433; Anderson v. Greble, 1 Ashmead, 138.

OPINION BY CUNNINGHAM, J., January 25, 1929:

In 1919 plaintiff and defendant became the owners, as tenants in common, of the property known as the Eckert Mansion at the southeast corner of Penn and Third Avenues in West Reading Borough. The property has a frontage of 295 feet on Penn Avenue and extends southwardly along Third Avenue approxi-

mately 190 feet to Franklin Street. At the corner of Penn and Third Avenues the elevation of the lot is about twelve feet above the grade of the intersecting streets and a retaining wall has been erected along the Penn Avenue frontage. Prior to 1924 there was no sidewalk on the western, or Third Avenue, side of the property. Along this side the elevation of the lot above the grade of the street decreases toward the south from twelve feet at the corner of Penn Avenue to two feet at a point about midway between Penn Avenue and Franklin Street. The lot sloped from the top of the elevation to the cartway of the street and the bank consisted of a base of solid rock covered with loose stones and yellow clay.

In August, 1924, the parties received final notice from the municipality to lay a curb and sidewalk along the Third Avenue side of their property "according to the regulations of, and the provisions, as to manner, kind and quality of work and materials, of the ordinances of the borough" etc. Under date of April 14, 1925, the owners executed a lease of the property to the Commonwealth for the use of the State Police Department and agreed therein to make certain repairs to the buildings. In making these repairs and in completing the laying of the curb and sidewalk, the plaintiff, Sharpe, who was in active control of the property, made certain expenditures and brought this action in the court below to compel his co-tenant, Keiser, to contribute one-half thereof. By admissions in the pleadings and at the trial the issue was narrowed down to a contest over the liability of defendant for one-half of the cost of constructing a retaining wall along the northern half of the Third Avenue side of the property, the erection of which plaintiff affirmed, and defendant denied, was properly incidental to and a part of the construction of the sidewalk and necessary for the preservation of the premises. The material facts relative to the construction

and cost of the curb and sidewalk, including the grading and the wall, are not seriously in dispute; the controversy relates rather to the inferences to be drawn therefrom. There was no evidence of actual consent by defendant to the construction of the wall. The case was submitted to the jury with the instruction, substantially, that defendant was not liable to contribute one-half of the cost of constructing the wall unless its construction was necessary (a) to comply with the borough's requirements, or (b) for the preservation of the property. Under the judgment as finally entered on the verdict defendant is required to pay one-half of the cost of the wall; hence this appeal.

Appellant assigns for error: (a) certain portions of the charge, (b) the refusal of his fifth and sixth points and the qualification of the affirmance of his second point, and (c) several rulings on evidence. An understanding, in some detail, of the circumstances under which the wall was built is essential to the disposition of the assignments. When the notice to lay the curb and sidewalk was received in August, 1924, the defendant, by arrangement with the plaintiff, began the grading and considerable progress had been made before inclement weather halted the work. Plaintiff contributed to the cost of the work done by the defendant in 1924 and there is no dispute up to this point. Sometime during the first half of 1925 proceedings to partition the property were instituted by the plaintiff and the defendant did nothing more toward complying with the municipal order. In the latter part of 1925 plaintiff undertook the completion of the work of laying the pavement and installing the curb and employed a contracting company for that purpose.

There were material disputes in the evidence both as to what the regulations of the borough actually required and with respect to the most practical and economical way of complying therewith. It appears, however, that Third Avenue is a sixty foot street be-

tween building lines, with a width between curbs of thirty-four feet and a sidewalk of thirteen feet on each side. Under one view of the evidence the requirements for the sidewalk were: (1) a curb, (2) a planting or tree space of three feet, six inches, including the curb, (3) a concrete pavement five feet in width, and (4) another planting space of four feet, six inches—a total of thirteen feet. There was some evidence that under conditions similar to those existing along this property the borough had not always required the inner planting space of four feet, six inches, but had permitted the property owners to begin the slope of their lots one foot inside of the pavement. Upon this theory the defendant admitted liability for one-half of the cost of grading for a distance of nine feet, six inches from the face of the curb and of the laying of the curb and concrete pavement, but denied liability for any grading or construction beyond nine and one-half feet from the curb. Plaintiff had the excavating and grading carried back the full thirteen feet to the building line and the wall was built on a base two feet wide inside of that line. The wall is five feet, ten inches high at the corner of Penn Avenue and thirty inches high at its southern end and about midway has an opening with steps affording access to the lot and buildings. As a result of the blasting, admittedly necessary in excavating the solid rock, the embankment was left in a jagged and loosened condition requiring some further treatment to prevent it from crumbling and falling and washing down on the pavement. As appears from the testimony, either of two methods was available—the construction of a wall or terracing the bank. The plaintiff adopted the method of building the wall out of the stones excavated from the bank. There was a sharp conflict in the testimony upon the question whether a terrace would have been more practical and economical than the wall. If the construction of the wall was reason-

ably necessary to a full compliance with the regulations of the borough governing the laying of this curb and sidewalk the expenditure would be comparable to those for taxes, water rents, insurance and liens; the consent of the co-tenant would be implied and he would be liable to contribute (Fassitt v. Seip, 249 Pa. 576, 596,) to the reasonable cost of whatever was essential to meet the requirements of the municipality. If, however, it was constructed merely as an improvement to the property, defendant, not having consented, would not be liable: Dech's Appeal, 57 Pa. 467; Crest v. Jack, 3 Watts 238; Appeal of Kelsey, 113 Pa. 119. Under the evidence, we think this was a question for the jury.

An examination of the charge and answers to points convinces us that the issues were fully and fairly submitted to the jury. There was evidence, which, if believed, would sustain the verdict upon the theory that the jury found that the construction of the wall was an essential part of full compliance with the regulations of the municipality. There was no evidence that the borough waived in any way the requirement for a thirteen foot sidewalk along this property, and a jury would be entirely justified in rejecting the defendant's theory that he was only liable for the cost of a sidewalk nine and one-half feet wide. Clear instructions were given that, if the jury found that the wall "was an improvement placed there by Mr. Sharp because he thought it enhanced the value of the property, or because he thought that he as an individual would do it as a matter of good business, or because he thought it was the thing to do," the defendant was not liable to contribute, and there was evidence from which such finding might have been made. But there was also evidence from which the jury could find that it was erected as part of the work of laying, and as a protection to, the sidewalk and a necessary support for the embankment. Appellant's principal complaint seems

to be based upon the qualification of the answer to his second point. The point and answer read:

"If the jury find that the stone wall was not necessary to comply with the borough's requirements, the plaintiff cannot recover one-half of the cost of its construction, including excavating for it, unless the defendant consented thereto.

"Answer: Affirmed, with the proviso that if the erection of the wall was absolutely necessary for the preservation of the property, the plaintiff can recover one-half the actual reasonable cost thereof from defendant."

By the fifth and sixth points, which were refused and not read, the court was requested to charge that, in the absence of proof of consent by defendant, plaintiff could recover only "for repairs to buildings already erected and in being on the premises that are absolutely necessary to the enjoyment of the property," and that the wall was not a repair, but an improvement. We are not persuaded that the trial judge erred in disposing of these points, or in charging thus in explanation of the qualification: "From all of the testimony you will have to determine whether or not the erection of that wall was absolutely necessary for the preservation of this property, because only to that extent, under the law, did Mr. Sharp have a right to bind Mr. Keiser. Being joint tenants or tenants in common, they both had in law an ownership in the property, and neither of them was constituted the agent of the other for the making of repairs there without the consent of the other, unless these repairs were absolutely necessary. In no event would one tenant in common be authorized to make improvements to a property which the other tenant in common objected to or did not consent to."

Under the conflicting evidence it was for the jury to say whether the wall was built as an "improvement." In our opinion the instructions were not

erroneous under the cases already cited, to which may be added Anderson v. Greble, 1 Ashmead 136. "A tenant in common cannot claim for improvements made without the consent of his co-tenant ...... but repairs that are absolutely necessary to the enjoyment of the property stand on a different footing": Dech's Appeal, supra. But this question of the liability of a co-tenant to contribute to repairs is not necessarily involved on this appeal, because, as we have seen, there was evidence from which the jury could find that the wall was necessary to comply with the regulations and requirements of the municipality. Nor do we think it was error to permit the experienced contractor who had done the blasting for the excavation to testify that the bank would not have stood alone and that in his judgment the practical way to protect the pavement was to erect the wall. The defendant was permitted to testify that the wall was not necessary because the "backing was solid rock," and the embankment could have been "tapered off at the top." The court properly sustained the objection of plaintiff's counsel to permitting a witness for defendant to state "whether this wall was a necessary repair or improvement;" that was a question for the jury under all the evidence. By his last assignment appellant charges the trial judge with error in sustaining plaintiff's objection to his offer of the partition proceedings. Defendant was permitted to testify that plaintiff had instituted such proceedings early in 1925 and that defendant "wouldn't go ahead with the pavement any further pending the partition proceedings." The purpose of the offer, as stated, was "to negative any possible conclusion or argument of consent." In sustaining the objection the court said: "There is no evidence of consent." At no stage of the trial did the plaintiff contend or even suggest that the defendant had actually consented to the construction of the wall. So far as disclosed by the purpose

182

stated, the evidence offered was irrelevant to any issue then being tried. Appellant's case seems to have been fairly submitted to the jury and we think the court below was justified in declining to interfere with the verdict.

We accordingly overrule the assignments and affirm the judgment.