## Thompson *v.* Allegheny Valley Street Railway Company, Appellant.

Argued October 6, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William A. Challener,* with him *William A. Challener, Jr.,* for appellant.

*Emerson Hazlett,* for appellee.

OPINION BY MR. JUSTICE LINN, November 12, 1937:

Prior to 1902, Ross Street, in the Borough of Tarentum, crossed the tracks of the West Penn Railway at grade. A street car company operated a street railway in Ross Street which was crossed by the steam railroad tracks. These tracks interrupted the continuous operation of the street cars, requiring passengers to walk across the railroad tracks. In 1902 the borough and the street car company made a contract reciting that "the safety, security and convenience of public travel requires that said railway company shall cross the tracks of the West Penn Railway in said borough above grade," and providing for the separation of the grades. Pursuant to the contract a bridge or viaduct carrying Ross Street overhead was constructed at the expense of the street railway company. A necessary part of the structure was a stairway for pedestrians affording access to and from the viaduct. The fifth paragraph of the contract provided: "That the Railway Company will keep

viaduct in continuous good condition and repair at its own cost and expense so long as its tracks shall occupy the same. . . ."

Plaintiff, on December 13, 1933, while descending the stairway, fell and was injured as the result of snow and ice on the steps. He sued the defendant street railway company alleging breach of the duty to keep the viaduct in reasonably safe condition for travel and got a verdict. Defendant appeals, contending that it was under no duty either to the borough or to the plaintiff, to remove the snow and ice which caused the injury.

In its brief, defendant agrees "that the viaduct was and is a public street"; that "The steps in question lead from the viaduct to and connect physically and directly with Fifth Street . . . [and] . . . also, constitute a street or public highway." In other words, the stairway is part of the viaduct. The abolition of the grade crossing benefited the street railway company; it agreed to keep the viaduct "in continuous good condition and repair at its own cost and expense so long as its tracks shall occupy the same. . . ." Defendant says its agreement means that it would keep the structure in repair. The brief puts it in this way: "Both phrases mean the same thing. 'Good condition' and 'good repair' mean the same thing as 'good condition and repair.' Both words and both phrases mean 'to maintain in or restore to a sound state.' To keep a structure in good condition means to prevent it from falling into decay or dilapidation. To repair means to restore to a good or sound state after decay or dilapidation has occurred."

We think defendant takes too limited a view of the covenant which must be considered in the light of the circumstances surrounding the making of the contract. All the words used must be given effect; the words "good condition" cannot be eliminated from consideration by saying that in some instances the words "good repair" may mean the same thing as "good condition." What were the circumstances confronting the parties when

they dealt with the situation? The movement of street cars was interrupted by the grade crossing of the railroad tracks. But the street car tracks in Ross Street furnished no impediment to pedestrian travel along the sidewalks of the street; pedestrians could pass to and fro at grade. The borough, of course, had certain responsibilities measured by a well recognized standard for the safety of pedestrian travel. By the separation of the grades the street railway company improved its position in obvious respects and for this improvement it assumed certain obligations. The improvement required the stairway; being part of the public highway, the borough was under a duty to pedestrians using the stairs—the same duty theretofore on the borough with regard to the sidewalks at grade, but one obviously more onerous to the extent that steps require more care than a level sidewalk. The stairway was intended for use and the railway company's covenant to keep them in "good condition" must be considered in the light of the use to be made of them, that is, in reasonably safe condition for use by pedestrians exercising due care. So far as structure was concerned, the stairway was not out of repair in the sense that it needed mending, but "repair" also has a more comprehensive significance. In *McLaughlin v. City of Corry*, 77 Pa. 109, the accumulation of snow and ice on a sidewalk was spoken of as want of repair.

We must reject defendant's contention that plaintiff, not being a party to the contract, cannot recover against the defendant but must look to the borough. Defendant's contract to perform the borough's duty to the public raises defendant's duty to plaintiff. The borough would of course be liable for failure to perform its duty, but by the contract the primary responsibility of keeping the stairway in good condition for pedestrians is on the street railway company; it cannot complain if a direct demand is made upon it instead of first enforcing what, in view of the contract, may be called the

122

borough's secondary liability: cf. *Dutton v. Lansdowne Borough,* 198 Pa. 563, 48 A. 494; *Penna. & Ohio Canal Co. v. Graham,* 63 Pa. 290; *Gates v. Penna. R. R. Co.,* 150 Pa. 50, 24 A. 638; *Hays v. Gallagher,* 72 Pa. 136. No other question is involved. It is not disputed that plaintiff was injured by negligence as the verdict establishes.

Judgment affirmed.