## Oughton v. Continental Associates, Inc.

552

*Eastburn & Gray,* for petitioner.
*Ross & Smith,* for respondent.

SATTERTHWAITE, J., June 22, 1956.—The problem presented in this declaratory judgment proceeding may be shortly stated: Where a private stone and dirt country driveway or lane, about 1,500 feet in total length from a public road across the front or servient property to the rear or dominant property, has previously been ex parte resurfaced in "blacktop" material by the servient owner as to about 1,200 feet thereof from the public road to her buildings thereon, and such "blacktop" is now in need of repair, may the servient owner cause such 1,200 feet of the lane to be not only patched but also completely resurfaced with amesite material, and also compel the unwilling dominant owner of the rear property, which by grant has, and by necessity must have, an easement in common in the use of such lane, to contribute one-half the total cost thereof, in the absence of any agreement between the parties or their predecessors on the subject other than a clause in the record grant of such easement to the dominant owner subjecting it to a half share of the expenses "of keeping said right of way or lane in good order and repair"?

The matter has been brought before the court on the petition of Elizabeth R. Oughton, owner of the front or servient land, naming Continental Associates, Inc., owner of the rear or dominant land as respondent, and requesting the court to construe the subjection clause and to enter a declaratory judgment authorizing the resurfacing project and the enforcement of contribution therefor. Except for the necessity for such improvement and its liability therefor, respondent's answer admits substantially all the fundamental facts.

Hearings were held before the undersigned, and at the conclusion thereof he, in company with counsel and representatives of the parties, made a personal inspection of the premises. In due course, requests for findings were filed by each side and the case is now ripe for disposition by the hearing judge subject to the right to except thereto to bring the questions involved before the court en banc. . . .

(Findings of fact deleted.)

## Discussion

The within petition for declaratory judgment and the subsequent conduct of the litigation were in accordance with the practice prescribed by the Act of May 22, 1935, P. L. 228, as amended, 12 PS §847, et seq. Neither petitioner nor respondent demanded a jury trial. Accordingly, they have dispensed therewith and have submitted all issues of fact, as well as those of law, for the determination of the court, subject to exceptions and appeal as in equity cases: Section 6 of the Act of 1935, supra, 12 PS §852; Loiacono v. Loiacono, 179 Pa. Superior Ct. 387. Hence, this opinion is filed in the form of an equity adjudication.

From a substantive point of view, likewise, the propriety of the action seems justified under section 2 of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §832, authorizing that remedy for the construction of, and declaration of rights and status under, a written instrument, particularly since the requirements of section 6 of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended by the Act of April 25, 1935, P. L. 72, and the Act of May 26, 1943, P. L. 645, 12 PS §836, have been met. An actual dispute exists between the parties to the record in which both have a concrete and antagonistic interest indicating imminent and inevitable litigation which will be avoided and the controversy

ended by a decision herein. Compare Lifter Estate, 377 Pa. 227; Rose v. Rose, 88 D. & C. 59. The fact that petitioner could possibly have gone ahead with the project in question and then brought an action at law to enforce contribution from respondent does not of itself preclude the remedy of declaratory judgment: Section 6, as amended by the Act of 1943, supra; Philadelphia Manufacturers Mutual Fire Insurance Company v. Rose, 364 Pa. 15. In view of the practical importance to the parties of a determination of the question prior to the making of any commitments or physical changes in the present condition of the lane, which undoubtedly requires urgent and immediate repairs of some sort, it would seem to be a proper exercise of judicial discretion to dispose of the problem in this proceeding.

On the merits, there are surprisingly few decisions relating to the mutual rights and duties of the interested parties in effecting, and then securing contribution for, the maintenance and improvement of easements used in common. It is of course well established that the dominant owner has the right and, so far as third persons are concerned, possibly the duty to keep the easement in repair as a matter of his own interest in the beneficial enjoyment thereof. See, e.g., Reed v. Allegheny County, 330 Pa. 300; Phillips v. Smelka, 76 D. & C. 287.

It is equally well established that the servient owner, as the holder of the fee, may make any use he pleases of all his land, including that upon which the easement is located, so long as he does not interfere with the servitude: Duross v. Singer, 224 Pa. 573; Mercantile Library Company of Philadelphia v. Fidelity Trust Company, 235 Pa. 5; Chambersburg Woolen Co. v. Hager, 66 Pa. Superior Ct. 63; Dyba v. Borowitz, 136 Pa. Superior Ct. 532. This would normally include the right of user: Ciocca v. Albanase, 20 D. & C. 96.

Changes in the physical nature of an easement of passage by the *dominant* owner without the consent of the servient owner, as by paving or other improvement, may or may not amount to a violation of the user depending upon considerations of reasonableness and necessity. Compare Littlefield v. Hubbard, 120 Me. 226, 113 Atl. 304, and Lorenc v. Swiderski, 109 N. J. Eq. 147, 156 Atl. 465, with Guillet v. Livernois, 297 Mass. 337, 8 N. E. 2d 921, and Knuth v. Vogels, 265 Wis. 341, 61 N. W. 2d 301. See also Hammond v. Hammond, 258 Pa. 51, and Annotation, 112 A. L. R. 1303. Such changes by the *servient* owner, however, would not, in themselves, amount to an obstruction of the easement: Moscufo v. Mattiaccio, 65 D. & C. 505. See also New York Central R. Co. v. Ayer, 242 Mass. 69, 136 N. E. 364.

Questions of contributon for repair and maintenance of ways used in common were presented in Bins v. Bins, 213 Iowa 432, 239 N. W. 68; Schuricht v. Hammen, 221 Mo. App. 389, 277 S. W. 944, and Van-Natta v. Nys, 203 Ore. 204, 278 P. 2d 163. See also Lamb v. Lamb, 177 N. C. 150, 98 S. E. 307, and Annotation, 169 A. L. R. 1147, for a discussion of the subject in connection with water and drainage easements. These decisions, however, are inconclusive and of little help in the instant case. They are not all in accord on the very right of contribution for ordinary repairs in itself; in any event, none of them involved the present question of liability to reimburse for extraordinary and unusual improvements by one party without the consent of the other and of questioned necessity.

In New York Central R. Co. v. Ayer, supra, there were statements in the opinion that if the servient owner saw fit to change the nature of the surface in his part of the common alley as he had a right to do, and if the new material be subject to deterioration differing from that obtaining at the creation of the ease-

ment, then he and he alone would be saddled with the correlative duty of the repair and maintenance thereof. But such observation is of little moment either way for present purposes since it related to the maintenance of that portion of the alley which, although mutually used for surface passage, had been repaved by wooden planking to permit other underground uses for the sole benefit of the servient owner; strictly speaking, the nature of the repaving was not occasioned by, nor for the benefit of, the common user.

Holland v. Braun, 139 Cal. App. 2d 626, 294 P. 2d 51, decided by the Second District Court of Appeal of California on March 1, 1956, is the only case discovered by the research of counsel or the hearing judge which factually presented a situation similar to the instant proceedings. That was an action for contribution from abutting property owners for costs of improving, grading and paving with stone and oil a former dirt driveway appurtenant to the several properties of all the parties to the action, plaintiff and defendant. The road in question was originally a mere bridle path, and had been widened and graded, apparently by the developer, after many of the lots had been sold in 1935, but it had remained a dirt road. From 1947 to 1952, it was practically impassable to vehicular traffic by reason of deterioration. Some repairs had been made voluntarily by various owners at various times.

In 1952 certain of the owners formed an association to have the road approved by the Los Angeles City Planning Commission, such approval being a condition precedent, under new city regulations, to the issuance of any further building permits. The commission approved the plan of the street, subject to the condition that the road be improved in certain respects, including grading and paving. The property owners' association then contracted to have that work done and brought this action to enforce contribution from the

nonparticipating owners. There was no agreement among the several parties relative to the maintenance of the private road, but section 845 of the California Civil Code required the owner of a private right of way easement to "maintain it in repair" and provided for proration of the cost thereof if the right of way be owned by more than one party.

The court affirmed a judgment for defendants, commenting at page 632, as follows:

"Respondent urged and the court below held that the contributions sought by the instant action are not to the cost of 'mantaining in repair', but to the cost of constructing a new and different road over the easement.

"In the instant action, as in Santa Cruz Rock Pavement Co. v. Broderick, 113 Cal. 628, (45 P. 863, 865), the written contract is not for 'repairs' but 'Re: Improvement of Oak Pass Road'. Oak Pass Road was theretofore a 'dirt road', which had been twice oiled and never paved. In the Santa Cruz case the street had been accepted by the city 15 years before, but it was not shown 'that the street in question had ever been paved with bituminous rock', and the court said, at page 633: 'It would be in violation of a proper construction of the term "repair" to hold that it included an original improvement of the street, or work of a different character from that previously done thereon'

. . .

"Section 845 of the Civil Code applies only to 'the cost of maintaining the road in repair'. Paving the dirt road was not 'maintaining it in repair'."

The rationale of the Holland case is equally applicable to the present proceedings. Respondent, by grant, is the beneficial owner of the right of way, "Subject, however, to one-half the expense of keeping said right of way or lane *in good order and repair*". (Italics supplied.) Assuming, as has not been questioned by either

side in this case, that such language imposes an obligation upon respondent to make contribution to some extent, insofar as concerns the maintenance of the unpaved lane in its orginal condition, at least, respondent's liability would not extend beyond reimbursement for "repairs". The repaving of the entire 1,200 feet portion of the lane, in addition to the patching thereof, and particularly the use of amesite which is a different and more expensive process from the "blacktop" earlier applied by petitioner, would far exceed that concept. From a grammatical standpoint, the word "repair" standing alone, in Pennsylvania as well as in California, signifies a restoration to a former condition without change of form or material: The Ardesco Oil Company v. Richardson and Tack, 63 Pa. 162. An undertaking to keep a street "in good repair" does not impose liability to repave a macadam street with brick on a concrete base: Williamsport v. Williamsport Passenger Railway Company, 206 Pa. 65.

It is clear, therefore, that if the lane in question were still dirt and stone, respondent would be under no duty to participate in paving the same. Yet that, in effect, is exactly what petitioner wants by these proceedings. She does not desire merely the "repair" of the present surface, which the evidence indicates could feasibly be accomplished by patching. To the contrary, she contemplates not only that work, but also the further improvement of the lane by an entirely new and different surfacing of the whole thereof, a project which to a large extent as a practical matter will benefit only her property.

Moreover, the hearing judge is not convinced that the use of the additional words "good order" in the present case is of any particular significance for present purposes. These words of course cannot be ignored, but they do not enlarge the general connotation of the continuing duty of contemporary maintainance from

time to time as occasion may require, as contrasted with long-term improvements or "capital" changes. The phrase "good order and repair", as here used, may well be considered equivalent to "good condition and repair" as construed in Thompson v. Allegheny Valley Street Railway Company, 328 Pa. 118. As petitioner points out, the Supreme Court there held that the word "repair" in such phrase included more than a mere mending; the obligation to keep "in good condition" resulted in liability in that case for failure to remove an accumulation of ice and snow, a duty probably not inherent in the concept of repairs. It does not follow, however, that either "good order" or "repair" requires a completely new repaving of the lane in question. Compare Nether Providence Township v. Philadelphia Rapid Transit Co., 280 Pa. 74, where the traction company was held liable for replacing a deteriorated roadway with macadam under a franchise condition that it keep the street "in good order, repair and travelable condition", but only because that had been the former type of surface. The opinion took particular notice of the fact that no contention of a "repaving" was made.

Similar conclusions are reached if petitoner and respondent, by reason of their enjoyment of mutual legal rights and common benefits in the lane in question, be considered as the equivalent of tenants in common of interests in real estate. In such cases it is well settled that one tenant in common is liable to contribute to his cotenant for *repairs* absolutely necessary, even though made without his consent; nevertheless, he is not similarly liable for *new additions or improvements* volunteered by the other to the common property: Cobbett v. Gallagher, 339 Pa. 231, and cases cited at page 235; Sharp v. Keiser, 95 Pa. Superior Ct. 174, 179.

In view of the foregoing considerations, the hearing judge concludes that petitioner's request entirely to

resurface the already sufficiently paved portion of the land with amesite legally amounts to a purpose to make a substantial improvement therein rather than a mere preservation thereof in "good order and repair." If she desires, she may perform this operation herself to enhance her own property. However, liability for a share of the cost of that project cannot be visited upon respondent without its consent no matter how much it might benefit therefrom or how desirable it might be for both parties.

It is unnecessary to discuss or decide the argument made in the brief on behalf of respondent that it has been relieved of any duty to participate in the cost even of patching and incidental repair of the present roadway because of petitioner's voluntary action in changing the character thereof in 1949. This question was not raised in the petition for declaratory judgment and in fact would appear to be moot in any event. Respondent had done patching in the past, and the president of the corporation expressed from the witness stand its willingness to resume its portion of the burden of repairing the admittedly bad condition of the present lane, explaining that it had failed to continue to do so solely on the advice of counsel pending the judicial determination of the problem here presented and decided.

In view of the condition of the lane and the drainage problem incident thereto appearing in the record and observed by the hearing judge upon personal inspection of the premises, it would seem obvious that self-interest on both sides would require some reasonable and equitable agreement to be effected between the parties concerning the maintenance of both the cartway and the surface water ditches incident thereto. It is to be hoped that this decision will result in such accord and more sharply delineate what can legally be expected in this connection . . .

(Conclusions of law deleted.)

### Decree Nisi

And now, June 22, 1956, for the reasons stated in the foregoing opinion, the prayer of the petition for declaratory judgment is hereby refused insofar as it requests a judicial declaration that respondent is liable to contribute one-half the expense of repaving the lane or driveway in question with amesite material, costs to be paid by petitioner.

This decree shall be entered as a decree nisi and shall become the final decree of the court unless exceptions be filed hereto within 20 days from this date. The prothonotary shall serve copies of this decree nisi and the accompanying opinion forthwith upon counsel of record in person or by mail.